UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MILLINER, <br><br> Plaintiff, <br><br> v. <br><br> DAVID DIGUGLIELMO, et al., <br><br> Defendants. | CIVIL ACTION <br><br> No. 08-4905 |

**MEMORANDUM/ORDER**

This is an action brought pursuant to 42 U.S.C. § 1983 by John Milliner, a prisoner incarcerated at the Pennsylvania State Correctional Institution at Graterford ("SCI-Graterford"), against various individuals and entities involved in the provision of Milliner's medical care while in state custody. Milliner's claims were the subject of a prior memorandum and order, entered on June 8, 2011 ("June 8 M&O"), which dismissed some of the claims of the complaint without prejudice. Milliner was subsequently granted leave to file a fourth amended complaint. Now pending before the court are two motions to dismiss the fourth amended complaint.

**I. Background**

A full summary of the case has already been provided in the June 8 M&O (Docket Nos. 81, 82). *See Milliner v. DiGuglielmo*, Civ. No. 08-4905, 2011 WL 2357824 (E.D.

Pa. June 8, 2011). In brief, Milliner commenced this action *pro se* on October 14, 2008, against numerous medical providers and administrators at SCI-Graterford (Docket No. 1). Milliner subsequently moved for an appointment of *pro bono* counsel. That request was granted on September 30, 2009 (Docket No. 37). After the appointment of counsel, Milliner filed a new pleading—styled as the third amended complaint, Milliner having submitted several amendments *pro se*—on August 6, 2010 (Docket No. 62).

The third amended complaint alleged, in substance, that Milliner was injured during a fall from the top bunk of his cell at SCI-Graterford in October 2006; that Milliner was eventually referred to a neurosurgeon at Altoona Hospital, Dr. Carroll Osgood, for spinal surgery; that Dr. Osgood's spinal surgery was "botched" and resulted in Milliner becoming temporarily paralyzed; and that Milliner's post-operative care was woefully inadequate.

The third amended complaint was the subject of three motions to dismiss (Docket Nos. 64, 66, 76), which were granted in part and denied in part in the June 8 M&O. The June 8 M&O permitted Milliner to proceed with the following claims:

| **Count** | **Description** |
|---|---|
| II | Deliberate indifference to Milliner's serious medical needs in violation of the Eighth Amendment by Dr. John Zaro at SCI-Graterford, predicated on Dr. Zaro's conduct prior to Milliner's surgery; |
| III | Municipal liability of Prison Health Services, Inc. ("PHS")—the private corporation with whom the state had contracted to provide medical services at SCI-Graterford—for Eighth Amendment violations allegedly caused by |

|     | |
| --- | --- |
|     | PHS's failure to establish a policy to ensure adequate post-operative care and/or adequate housing accommodations for a patient such as Milliner; |
| IV  | State-law medical malpractice against Dr. Zaro and three other medical providers at SCI-Graterford—Raymond Machak, Dr. Richard Stefanic, and Dr. Caleb Nwosu—predicated on the care or lack thereof received by Milliner both before and after Milliner's spinal surgery; |
| V   | State-law corporate liability for medical malpractice against PHS; |
| VI  | State-law vicarious liability for medical malpractice against PHS; |
| VII | State-law medical malpractice against Dr. Carroll Osgood, the physician who performed Milliner's spinal surgery; |
| IX  | State-law vicarious liability for medical malpractice against Altoona Hospital, where Milliner's spinal surgery was performed; |
| X   | State-law negligence against Machak and Drs. Zaro, Stefanic, and Nwosu. |

Count I of the third amended complaint, alleging deliberate indifference by three prison administrators (David DiGuglielmo, Julie Knauer, and Myron Stanishefski), was dismissed without prejudice to the filing of a responsive amendment. Similarly dismissed were claims for deliberate indifference by Dr. Stefanic, Dr. Nwosu, and Machak (pleaded as part of Count II); a claim for state-law corporate liability against Altoona Hospital (Count VIII); and a claim for state-law negligence against the three prisoner administrators, DiGuglielmo, Knauer, and Stanishefski; Dr. Osgood; PHS; and Altoona Hospital (all pleaded as part of Count X).

3

Milliner moved for leave to file an amended complaint on July 8, 2011 (Docket No. 83). The motion was granted by order dated July 11, 2011 (Docket No. 84), and the plaintiff's fourth amended complaint was filed on July 12, 2011 (Docket No. 85). The fourth amended complaint contains the following three additional claims for relief:[1]

| Count | Description |
|---|---|
| I | Deliberate indifference to Milliner's serious medical needs in violation of the Eighth Amendment by prison administrator Myron Stanishefski; |
| IX | State-law negligence against Stanishefski, predicated on Stanishefski's alleged failings in coordinating medical care at SCI-Graterford and in supervising those directly responsible for providing medical care; |
| X | State-law negligence against PHS, Stanishefski, and Dr. Richard Stefanic, predicated on alleged failure to exercise due care in ensuring that Milliner was assigned to a single-bunk after his spinal surgery. |

Myron Stanishefski moved to dismiss the fourth amended complaint on July 28, 2011 (Docket No. 87). The plaintiff filed a response in opposition to Stanishefski's motion to dismiss on August 17, 2011 (Docket No. 89). Defendants Altoona Hospital and Dr. Osgood jointly moved to dismiss the fourth amendment complaint on January 6,

---

[1] The numbering of counts below follows the fourth amended complaint, which varies slightly from the third amended complaint. After deletion of one of the claims dismissed in the June 8 M&O, the claim of vicarious liability for medical malpractice against Altoona Hospital (Count IX of the third amended complaint) appears as Count VIII of the fourth amended complaint. The plaintiff has also, apparently, abandoned the state-law negligence count against Raymond Machak, Dr. John Zaro, and Dr. Caleb Nwosu. That claim was pleaded as Count X of the third amended complaint and was not dismissed in the June 8 M&O. It appears nowhere in the fourth amended complaint.

2012 (Docket No. 92). The plaintiff filed a response in opposition to the joint motion on January 27, 2012 (Docket No. 93). Both motions are ripe for disposition.

## II. Discussion

A.   **Altoona Hospital/Carroll Osgood Motion to Dismiss**

Altoona Hospital and Dr. Osgood move to dismiss the fourth amended complaint as to them for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

The first three counts of the fourth amended complaint, pleaded pursuant to 42 U.S.C. § 1983, allege violations of Milliner's rights under the Eighth Amendment of the U.S. Constitution. This court has subject-matter jurisdiction to hear these claims because they raise federal questions. 28 U.S.C. § 1331. The first three counts are asserted only against Stanishefski, Dr. Zaro, and PHS.

The remaining counts of the fourth amended complaint, including the counts against Altoona Hospital and Dr. Osgood (Counts VII and VIII), assert violations of state law. To be heard in federal court, they must fall within the court's supplemental jurisdiction.[2] The supplemental-jurisdiction statute provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

---

[2]The parties are not completely diverse, so 28 U.S.C. § 1332 is not available as an alternate source of federal jurisdiction. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (explaining complete diversity requirement).

      controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Two claims are sufficiently related as to "form part of the same case or controversy under Article III," as required by § 1367(a), when the claims derive from "a common nucleus of operative fact" and would ordinarily be expected to be tried in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 275 (3d Cir. 2001). Altoona Hospital and Dr. Osgood argue that the claims against them do not share a common nucleus of operative fact with the jurisdiction-conferring claims against Stanishefski, Dr. Zaro, and PHS.

      According to the allegations of the fourth amended complaint, assumed to be true at this procedural juncture, *see Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), Milliner was referred to Dr. Osgood at the State Correctional Institute at Smithfield ("SCI-Smithfield") in Altoona, Pennsylvania, in August 2007 for treatment of his back injury. Dr. Osgood advised Milliner that he needed spinal surgery. Dr. Osgood performed the surgery on September 27, 2007, at Altoona Hospital. As a result of the surgery, Milliner was temporarily paralyzed from the neck down. Dr. Osgood did not order diagnostic imaging (such as an x-ray) of Milliner's back immediately after the surgery and did not ensure that such diagnostic imaging or other post-operative care was performed in a timely manner. Count VII of the fourth amended complaint alleges that

Dr. Osgood's performance of the surgery and post-operative conduct both constitute medical malpractice under state law. Count VIII asserts that Altoona Hospital is vicariously liable for Dr. Osgood's medical malpractice.

The allegations against Stanishefski, Dr. Zaro, and PHS concern conduct at SCI-Graterford both before and after Milliner's spinal surgery. Count I of the fourth amended complaint alleges that Stanishefski, an administrator, was deliberately indifferent to Milliner's serious medical needs in supervising the diagnosis and care (both pre- and post-operative) of Milliner's spinal injury. Count II alleges that Dr. Zaro, a physician who provided medical care at SCI-Graterford, was deliberately indifferent to Milliner's serious medical needs in treating and diagnosing Milliner's injury prior to the surgery. Count III alleges that PHS is liable because its customs and polices at SCI-Graterford caused Milliner's constitutional injuries.

The moving defendants stress that the medical treatment or lack thereof at issue in the federal claims is not identical to the treatment at issue in the state-law claims against Altoona Hospital and Dr. Osgood. The spinal surgery underlying the malpractice claim against Dr. Osgood occurred in a different locale than the federal claims—Altoona Hospital, rather than SCI-Graterford. The evidence relevant to the alleged malpractice during the spinal surgery will not be identical to the evidence of the alleged deliberate indifference in providing care to Milliner before and after the surgery.

Nevertheless, the state-law claims against Altoona Hospital and Dr. Osgood derive

from a common nucleus of operative fact as the federal claims. The operative facts center Milliner's spinal injury and subsequent medical treatment in the prison system. The evidence of his injury and the care he received will be at issue in both sets of claims. The federal claims concern both Milliner's pre- and post-operative care at SCI-Graterford. It would make little sense to carve out the surgical malpractice claim from the federal claims of deliberate indifference to serious medical needs, when the allegation is that Milliner's serious medical needs gave rise to the need for surgery and/or resulted from the deficient performance of that surgery. *Cf. Urena v. Wolfson*, Civ. No. 09-1107, 2010 WL 5057208, at *12-14 (E.D.N.Y. Dec. 6, 2010) (exercising supplemental jurisdiction over plaintiff's malpractice claim against private doctor and hospital, where plaintiff asserted jurisdiction-conferring *Bivens* claim against prison doctor involved in course of treatment). Thus, for purposes of 28 U.S.C. § 1367(a), the state-law claims and the federal claims constitute a single case or controversy.

The defendants' motion to dismiss could be read as asking the court, in the alternative, to decline to exercise supplemental jurisdiction. A district court may be permitted to do so under 28 U.S.C. § 1367(c).[3] But in this case, the defendants offer no

---

[3]The statute provides as follows:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

compelling reason to decline to exercise supplemental jurisdiction. Judicial economy would not be well served by bifurcating the claims into two actions, which would require the redundant presentation of evidence concerning Milliner's care at SCI-Graterford, SCI-Smithfield, and Altoona Hospital. The malpractice claims do not appear to raise complex or unsettled questions of state law, and they do not threaten to predominate over the federal claims.

Accordingly, in the order that follows, the defendants' motion to dismiss for lack of subject-matter jurisdiction will be denied.

**B.** **Stanishefski Motion to Dismiss**

Myron Stanishefski moves to dismiss the fourth amended complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, the fourth amended complaint "must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible." *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). In determining the plausibility of the claim for relief, the well-pleaded factual allegations of the plaintiff's complaint must be

---

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Growth Horizons, Inc. v. Del. Cnty.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993) ("In making its determination, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" (quoting *United Mine Workers of Am.*, 383 U.S. at 726)).

taken as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Stanishefski's motion to dismiss focuses primarily on allegations concerning Milliner's housing accommodations at SCI-Graterford. According to the fourth amended complaint, Milliner first complained of his housing conditions in a grievance filed on December 26, 2006, prior to his surgery. The grievance stated that Milliner's cell lacked any place for him to sit in a way that would take pressure off of his injured back; apparently, sitting on a bunk bed forced Milliner to stoop over, exacerbating his pain and discomfort. It is unclear whether Milliner was ever assigned to a "single-bed" cell (*i.e.*, a cell without bunk beds) prior to his surgery.

Milliner's surgery was performed in September 2007, and he underwent physical therapy at the State Correctional Institute at Laurel Highlands for three months thereafter. On January 15, 2008, he returned to SCI-Graterford. He was again assigned to a cell with bunk beds. Within a week, on January 22, Milliner complained to Dr. Stefanic that the bunk-bed arrangement forced him to bend his spine painfully when sitting up in bed. Dr. Stefanic told Milliner that he (Stefanic) "had notified the proper party in order to have [Milliner] placed in a cell that did not have a double bunk." 4th Am. Compl. ¶ 53. However, Milliner remained in a cell with bunk beds for several months, until a member of the Pennsylvania Prison Society contacted Stanishefski regarding the situation.

As of June 20, 2008, Milliner "had not been seen for a post-operative neurological follow-up, nor had he undergone post-operative medical imaging to determine if the

10

surgical fusion performed nearly a year prior had been successful." 4th Am. Compl. ¶ 57. Milliner filed a grievance on that date to complain about his continued pain and the lack of follow-up care. On June 28, 2008, Milliner's grievance was denied by Stanishefski, on the ground that a neurosurgical consultation had been ordered as of June 26—*i.e.*, several days after Milliner filed the grievance. Dr. Osgood had recommended that a follow-up consultation and medical imaging occur within one month of Milliner's surgery in September 2007.

The fourth amended complaint alleges that Stanishefski is employed as a "Health Care Administrator" at SCI-Graterford. The duties of such an administrator include: "planning, coordinating, and supervising inmate health care services" and "responding to inmate grievances regarding medical treatment and accommodation." 4th Am. Compl. ¶ 2. Although the fourth amended complaint alleges that Stanishefski is a registered nurse, there is no suggestion that he was personally involved in the direct provision of medical care to the plaintiff. His role was administrative only.

The legal standard applicable under the circumstances is clear. To plead an Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.'" *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*,

834 F.2d 326, 346 (3d Cir. 1987) (quoting *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978)). Here, the moving defendant does not dispute that Milliner's medical needs were serious, which leaves only the element of deliberate indifference at issue.

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 517 F.3d 318, 330 (3d Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05, and *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). In *Monmouth County Correctional Institutional Inmates*, the court collected several examples of the sort of improper conduct that might constitute "deliberate indifference," including the intentional refusal to provide care, the delay of necessary care for improper reasons, or the choice of inefficacious treatments to cut costs. *See* 834 F.2d at 346-47. But when a prison administrator knows that a prisoner with serious medical needs is under the care of medical providers, the administrator is generally justified in believing that the prisoner is receiving adequate care. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Put differently, a prisoner cannot state a claim for deliberate indifference against an administrator who believes that the prisoner is receiving medical care unless the prisoner can allege facts that give rise to a plausible inference that the administrator had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating)" the serious medical needs of the prisoner. *Id.*

In the pending motion, Stanishefski argues that the fourth amended complaint does not allege sufficient facts to show that "Stanishefski had a reason to believe or actual

12

knowledge that Milliner needed to be housed in a cell with a single bunk for a medical reason until he was notified by the Pennsylvania Prison Society[,] at which time Milliner was placed in a cell with a single bunk." Stanishefski Mem., at 6 (Docket No. 87).

The argument is unpersuasive. Milliner identifies two bases from which to infer that Stanishefski had actual knowledge or reason to believe that Milliner had a serious and unmet medical need for a single-bed cell following his surgery. As to actual knowledge, Stanishefski is alleged to have personally responded to Milliner's December 2006 grievance, in which Milliner first complained of the pain caused by sitting in a bunk bed. Although this grievance preceded Milliner's post-operative return to SCI-Graterford in January 2008, it provides a basis to infer that Stanishefski was or should have been aware of the pain Milliner would experience if housed in a cell with bunk beds. Further, the fourth amended alleges that Stanishefski should have been aware of Milliner's need for a single-bed cell because Stanishefski's duties as a health care administrator included a role in the arrangement of medically necessary housing arrangements.[4]

---

[4]There is some uncertainty regarding whether Stanishefski additionally had actual knowledge as of January 2008 (upon Milliner's post-operative return to SCI-Graterford) that Milliner's serious medical need for a housing accommodation was going unmet. The fourth amended complaint alleges that Dr. Stefanic told Milliner on January 22, 2008, that Stefanic had "notified the proper party" to have Milliner placed in a single-bed cell. 4th Am. Compl. ¶ 53. But the pleading does not allege that Dr. Stefanic in fact told the proper party, and it does not allege that Stanishefski was that party. The parties dispute whether it is reasonable to infer, on the basis of Dr. Stefanic's statement, that Stanishefski had actual knowledge of Milliner's unmet serious medical need for a single-bed cell in January 2008. Because the other allegations of the complaint discussed in the text are sufficient to state a claim, it is unnecessary to resolve the reasonableness of this inference.

At the pleading stage, the allegations concerning the duties attendant to Stanishefski's administrative role, as well as his handling of the December 2006 grievance, are sufficient to ground a plausible inference that Stanishefski knew or should have known that medical personnel at SCI-Graterford had failed to address Milliner's serious medical need for a housing accommodation. Accordingly, the motion to dismiss for failure to state a claim will be denied.[5]

\* \* \* \* \*

**AND NOW**, this 26th day of March 2012, upon consideration of the January 6, 2012, motion of defendants Carroll Osgood and Altoona Hospital to dismiss the fourth amended complaint for lack of subject matter jurisdiction (Docket No. 92) and the plaintiff's January 27, 2012, response in opposition thereto (Docket No. 93), it is hereby **ORDERED** that the motion is **DENIED.**

---

[5] The fourth amended complaint contains several additional theories for stating a deliberate indifference claim. These include, *inter alia*, allegations regarding Stanishefski's failure to take steps to schedule or ensure the scheduling of Milliner's surgery until four months after his injury, and Stanishefski's failure to ensure that medical personnel conducted timely follow-up care after Milliner's surgery. 4th Am. Compl. ¶¶ 81, 83. As with the allegations concerning housing accommodations, Milliner relies heavily on Stanishefski's job duties as a health care administrator to ground an inference that Stanishefski had actual knowledge or reason to know that medical personnel were improperly delaying Milliner's surgery and/or post-operative follow-up care. Whether those inferences are reasonable is debatable; it is also open to question whether the alleged delays transcend ordinary negligence or medical malpractice, which is not actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. But Stanishefski fails to address these alternate theories of liability in his motion to dismiss. Thus, even if the theory of deliberate indifference premised on Milliner's housing accommodations failed (which it does not), these alternate theories of liability would remain.

Further, upon consideration of the July 28, 2011, motion of defendant Myron Stanishefski to dismiss the fourth amended complaint for failure to state a claim (Docket No. 87) and the plaintiff's August 17, 2011, response in opposition thereto (Docket No. 89), it is hereby **ORDERED** that the motion is **DENIED**.

                                              BY THE COURT:

                                              /s/ Louis H. Pollak
                                              Pollak, J.